IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

WILLIAM HUDSON,        :
       :
         Petitioner,      :
       :
    v.            :      Civil Action No. 20-805-RGA
       :
ROBERT MAY, Warden, and    :
ATTORNEY GENERAL OF THE   :
STATE OF DELAWARE,      :
       :
         Respondents.     :

---

William Hudson.  *Pro se* Petitioner.

Carolyn Shelly Hake, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

---

**<u>MEMORANDUM OPINION</u>**

September 27, 2023
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner William Hudson is an inmate at the James T. Vaughn Correctional Center in Smyrna, Delaware.  Pending before the Court is Petitioner's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.  (D.I 3; D.I. 8; D.I. 9)  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 18; D.I. 24)  For the reasons discussed, the Court will deny the Petition.

I.    **BACKGROUND**

> [Petitioner] began sexually abusing his daughter, Sally, in 2008, when she was 12 years old. The abuse included using a vibrator on her vagina; inserting sex toys and his fingers into Sally's vagina and anus; and forcing Sally to masturbate him. The abuse continued regularly, several times a week, until April 2011.  Sally disclosed the abuse to the Department of Family Services, when she was interviewed in April 2011. Based on that interview, New Castle County Police Officers obtained and executed two search warrants for [Petitioner's] home.  They found vibrators and sex toys. The sex toys contained Sally's DNA, and, in some cases, both Sally's and [Petitioner's] DNA.

*Hunter v. State*,[1] 89 A.3d 477 (Table), 2014 WL 1233122, at *1 (Del. Mar. 24, 2014).

In October 2011, Petitioner was indicted on one count of endangering the welfare of a child; twenty-five counts of first degree sexual abuse of a child by a person in a position of trust ("SACPPT"); one count of continuous sexual abuse of a child; and two counts of violation of privacy.  (D.I. 17-12 at 59-71)  In February 2012, a Delaware Superior Court jury convicted Petitioner of all indicted charges.  (D.I. 17-1 at Entry No. 23)

> In June 2012, before sentencing, the State advised [Petitioner] and the trial court that SACPPT was not enacted until June 2010, and

---

[1]On direct appeal, the Delaware Supreme Court assigned pseudonyms to Petitioner ("Hunter") and the victim. (D.I. 17-14 at 7 n.1)  The Superior Court used the same pseudonyms until February 6, 2019, when it ceased using a pseudonym for Petitioner. *See id.*

> that counts 2–16 were related to a time period before June 2010.
> The State suggested that, since the elements of both crimes are the
> same, counts 2–16 should be amended by substituting the crime of
> second degree rape in placement of SACPPT.

*State v. Hunter*, 2017 WL 5983168, at *1 (Del. Super. Ct. Sept. 29, 2017). Petitioner moved to

dismiss the fifteen counts in July 2012. (D.I. 17-1 at Entry No. 27) In January 2013, the

Superior Court sentenced Petitioner on all counts not addressed in Petitioner's motion to dismiss

to a total of 122 years of unsuspended prison time. (*Id.* at Entry No. 32; D.I. 8 at 2) In March

2013, with leave of the Superior Court, the State *nolle prossed* the fifteen charges that were the

subject of the motion to dismiss. (D.I. 17-1 at Entry No. 35) Petitioner appealed, and the

Delaware Supreme Court affirmed Petitioner's convictions and sentence. *See Hunter*, 2014 WL

1233122, at *2.

In January 2015, Petitioner filed a *pro se* motion for postconviction relief pursuant to

Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), followed by a motion for the

appointment of counsel. (D.I. 17-1 at Entry Nos. 44, 45, 47) The Superior Court appointed

postconviction counsel, who moved to withdraw in August 2016. (D.I. 17-1 at Entry Nos. 49,

51, 54) Petitioner opposed post-conviction counsel's motion to withdraw and filed a

memorandum in support of his Rule 61 motion in October 2016. (*Id.* at Entry Nos. 59, 60; D.I.

17-13 at 106-122) The State filed a Response. (D.I. 17-16 at 95-112) Petitioner filed a

Response and then an additional submission. (D.I. 17-13 at 129-134; D.I. 17-8) The Superior

Court denied Petitioner's Rule 61 motion on September 29, 2017. *See State v. Hunter*, 2017 WL

5983168 (Del. Super. Ct. Sept. 29, 2017). On October 2, 2017, the Superior Court *sua sponte*

issued a scheduling order to address claims of ineffective assistance of appellate counsel that

Petitioner "alluded to" in his Rule 61 motion. (D.I. 17-1 at Entry No. 70; D.I. 17-9) On October

2

6, 2017, the Superior Court held that post-conviction counsel's motion to withdraw was rendered moot by its September 2017 decision. (D.I. 17-1 at Entry No. 71) On October 23, 2017, Petitioner filed a *pro se* supplemental memorandum in support of his ineffective assistance of appellate counsel claims (D.I. 17-13 at 137-141) and then a final supplement in February 2018 (D.I. 17-11). A Superior Court Commissioner issued a Report and Recommendation recommending the denial of Petitioner's ineffective assistance of appellate counsel claims. *See State v. Hunter*, 2018 WL 2085006 (Del. Super. Ct. Apr. 25, 2018). The Superior Court adopted the Report and Recommendation and denied Petitioner's supplemental claims. (D.I. 17-3 at 15-18) The Delaware Supreme Court affirmed the Superior Court's decision in January 2020. *See Hudson v. State*, 225 A.3d 316 (Table), 2020 WL 361784 (Del. Jan. 21, 2020). Petitioner timely filed the instant Petition in June 2020.

Petitioner filed a second Rule 61 motion on April 21, 2021, which the Superior Court dismissed on October 7, 2021. (D.I. 17-1 at Entry Nos. 106, 107) Petitioner did not appeal that decision.

## II.   GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64

4

(1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (cleaned up).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *id.* at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained in *Harrington*, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. The Supreme Court expanded the purview of the *Richter* presumption in *Johnson v. Williams*, 568 U.S. 289 (2013). Pursuant to *Johnson*, if a petitioner has presented the claims raised in a federal habeas application to a state court, and the state court opinion addresses some but not all of those claims, the federal habeas court must presume (subject to rebuttal) that the state court adjudicated the unaddressed federal claims on the merits. *Id.* at 298-301. The consequence of this presumption is that the federal habeas court will then be required to review the previously unaddressed claims under § 2254(d) whereas, in the past, federal habeas courts

often assumed "that the state court simply overlooked the federal claim[s] and proceed[ed] to adjudicate the claim[s] *de novo.*" *Id.* at 292-93.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

The Petition asserts the following four grounds for relief:  (1) trial counsel provided ineffective assistance (D.I. 8 at 6); (2) appellate counsel provided ineffective assistance (*id.* at 8); (3) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) (D.I. 8 at 9); and (4) the Superior Court's *voir dire* was inadequate to assess individual jurors' ability to be impartial, and counsel was ineffective for failing to raise this issue (*id.* at 11).

### A.  Claim One:  Ineffective Assistance of Trial Counsel

Petitioner contends that trial counsel provided ineffective assistance ("IATC") by: (a) failing to pursue suppression of two videos obtained under an allegedly defective warrant; (b) failing to interview or subpoena additional fact witnesses and consult or subpoena experts; (c) failing to conduct an adequate pretrial investigation; (d) failing to present any evidence at the conclusion of the State's case; and (e) failing to object to the violation of privacy counts in the indictment.  Petitioner presented Claim One (a), (b), and (c) in his Rule 61 motion and to the Delaware Supreme Court on post-conviction appeal, and both state courts denied the arguments

7

as meritless.  (D.I. 17-12 at 12-24, 27-32, 35-37;  D.I. 17-13 at 108-110, 112, 117-122); *see Hunter*, 2017 WL 5983168, at *2-4, *6-7; *Hudson*, 2020 WL 362784, at *1-6. Petitioner presented Claim One (d) and (e) to the Delaware Supreme Court on post-conviction appeal, which denied the arguments as meritless.  (D.I. 17-12 at 27, 36-37);s *see Hudson*, 2020 WL 362784, at *5-6.  Consequently, Claim One will only warrant habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of trial claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *See Strickland*, 466 U.S. at 688.  Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.  *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).  Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable.  *See Strickland*, 466 U.S. at 689.  A court many deny an ineffective assistance of counsel claim by only deciding one of the *Strickland* prongs.  *See id.* at 697.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware

Supreme Court correctly identified the *Strickland* standard applicable to Petitioner's IATC

allegations. *See Hudson*, 2020 WL 362784, at *2. Consequently, the Delaware Supreme Court's

decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A]

run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to

the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to'

clause").

The Court's inquiry is not over, however, because it must also determine if the Delaware

Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. *See*

*Richter*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Delaware

state courts' denial of Petitioner's ineffective assistance of counsel allegations through a "doubly

deferential" lens.[2] *Id.* "[T]he question is not whether counsel's actions were reasonable, [but

rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential

standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is

reasonably likely the result would have been different" but for counsel's performance, and the

"likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when

viewing a state court's determination that a *Strickland* claim lacks merit through the lens of §

---

[2]As explained by the *Richter* Court,

> The standards created by *Strickland* and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is "doubly
> so. The *Strickland* standard is a general one, so the range of
> reasonable applications is substantial. Federal habeas courts must
> guard against the danger of equating unreasonableness under
> *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

The Court will address the specific IATC arguments seriatim.

### 1. Trial counsel failed to object to an illegal search warrant

Petitioner contends that trial counsel provided ineffective assistance by failing to file a motion to suppress two videos Petitioner made of the victim while she was in the shower on the ground that they were obtained by execution of a defective search warrant. Petitioner asserts that trial counsel should have challenged the admission of the two shower videos on the following grounds: (1) the warrant lacked probable cause to support a search for video/picture evidence (D.I. 9 at 6); (2) the warrant failed to satisfy the Fourth Amendment's particularity requirement and was overly broad because it allowed a search of the entire contents of the computers without categorical and temporal limitations (*id.* at 6-8); and (3) the police exceeded the scope of the warrant by seizing/searching the videos titled with a date outside the two-year time period (April 2009-April 2011) of criminal activity set forth in the warrant's attached affidavit of probable cause (*id.* at 5). Petitioner alleges that he would not have been convicted of the two violation of privacy charges but for the admission of the two shower videos. (*Id.* at 4)

The following background information provides context for Petitioner's argument.

> After the DFS interview in which the victim disclosed the abuse, New Castle County police officers obtained and executed a search warrant for [Petitioner's] home. The subjects of that first warrant were a white vibrator that the victim had identified and a receipt reflecting the purchase of the vibrator. In the probable cause affidavit for a second search warrant, the officer who executed the first warrant indicated that he arrived at the home to execute the first warrant and was admitted into the home by [Petitioner's] wife. [Petitioner's] wife indicated that she knew where the vibrator was located and led the officer to the basement, where the officer found

numerous sexual stimulation devices. In a dresser that contained many of the devices, the officer also found videotapes with labels that identified them as pornographic and DVDs with handwritten labels on them. Nearby, the officer observed a computer tower and video camera. [Petitioner's] wife then led the officer upstairs to a computer room, where she indicated that [Petitioner] kept all of his receipts. There, the officer found at least three computers, two of which [Petitioner's] wife said she was not permitted to use. The officer also observed DVDs with handwritten labels indicating that they were pornographic and magazines that depicted naked young adult women, with titles such as "Barely Legal." [Petitioner's] wife also indicated that [Petitioner] owned a digital camera that she was not permitted to use. Based on a detailed recitation of these observations and others, the officer sought a warrant to search for and seize the various sexual stimulation devices, the computers, the video camera, the digital camera, and various other items.

After execution of the second warrant, a member of the New Castle County Police technology crimes division examined the computer that had been located in [Petitioner's] basement and found two videos of the victim in the shower. The videos were a few seconds in length; the victim testified that [Petitioner] recorded the videos and identified his voice in the videos.

*Hudson*, 2020 WL 36274, at *3.

In his first Rule 61 motion, Petitioner argued that trial counsel should have filed a motion to suppress the video evidence obtained pursuant to the execution of the second warrant on two grounds: (1) there was no probable cause to seize or search the electronic equipment; and (2) the second warrant lacked sufficient particularity, permitting an overbroad search of the contents of the electronic equipment without limiting the search to any time period.  (D.I. 17-8)  The Superior Court denied the argument after determining that there was sufficient probable cause "to search for the items taken by the police pursuant to the warrant.  Had the matter been

11

previously raised by trial counsel, a motion to suppress would not have prevailed." *Hunter*, 2017 WL 5983168, at *7.

On post-conviction appeal Petitioner raised the same issues he now raises.  He argued that trial counsel was ineffective for failing to argue that: (1) the warrant lacked probable cause to search for anything other than sexual abuse of a minor and the evidentiary nexus was insufficient to search the electronic equipment (D.I. 17-2 at 16); (2) the warrant lacked sufficient particularity with respect to the electronic equipment because it "had no temporal limitation and it permitted a wide-ranging, exploratory search" (*id.* at 13); and (3) the search of his computer for items outside the two-year period of alleged criminal activity (April 2009-April 2011) exceeded the scope of the warrant (*id.* at 23-24).  The Delaware Supreme Court affirmed the Superior Court's decision after determining that Petitioner failed to satisfy the *Strickland* standard, opining:

> With respect to the convictions of Sexual Abuse of a Child by a Person in a Position of Trust, Continuous Sexual Abuse of a Child, and Endangering the Welfare of a Child, [Petitioner] cannot demonstrate prejudice from trial counsel's failure to seek to suppress the videos or appellate counsel's failure to assert that position on appeal.  The evidence supporting those convictions that is not subject to [Petitioner's] challenges to the search warrant — including the victim's testimony and the physical evidence — was overwhelming, and there is no reasonable basis to conclude that the two short videos affected the outcome on those charges.
>
> With respect to the Violation of Privacy charges, we conclude that [Petitioner's] counsel did not act in an objectively unreasonable manner by not seeking to suppress the shower videos. In his affidavit in response to [Petitioner's] postconviction motion, trial counsel stated that he reviewed both search warrants and believed there was no basis to suppress the seized evidence. That was not a professionally unreasonable conclusion.  The affidavit in support of the second search warrant contained facts sufficient to establish probable cause to seize the electronic equipment and to search their contents for video or photographic evidence of [Petitioner's] sexual abuse of his daughter, including facts concerning the victim's

12

interview statements and the officer's observations and [Petitioner's] wife's statements during the execution of the first search warrant. Thus, there was no reasonable basis for counsel to raise a probable cause argument.

As for particularity, the computer forensics officer testified that the shower videos had file names that were consistent with having been assigned by a video recorder and a date of March 10, 2008, which was generally within the time period of the abuse. In *Wheeler v. State*, on which [Petitioner] relies, officers obtained a warrant to search for evidence of witness tampering, which would not have involved video or image files, arising from conduct that began no earlier than July 2013, but they found video evidence of child pornography on a computer that had not been powered on since September 2012. In this case, in contrast, a search for video files bearing a date in March 2008 was within the scope of the criminal activity alleged in the affidavit of probable cause. Similarly, unlike in *Buckham v. State*, on which [Petitioner] also relies, in this case there was a sufficient nexus between the computer where the shower videos were ultimately found and the criminal activity that was alleged in the affidavit of probable cause. In the circumstances of this case, we conclude that the search warrant was not impermissibly broad, and counsel therefore was not ineffective for failing to challenge the warrant.

*Hudson*, 2020 WL 362784, at *4.

In this proceeding, Petitioner focuses on the violation of privacy convictions and contends that the Delaware Supreme Court unreasonably applied *Strickland* when concluding that trial counsel's failure to file a motion to suppress the two shower videos on the three grounds he has identified did not constitute ineffective assistance. Where counsel's failure to competently litigate a suppression issue is the focus of the ineffective assistance claim, to demonstrate prejudice, the petitioner must "also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). For the

following reasons, the Court concludes that Petitioner's argument fails to satisfy the standard set forth in § 2254(d).[3]

### a. Probable cause to seize/search electronic equipment

Whether probable cause exists to support a search warrant is an objective determination based on the totality of the circumstances present at the time of the challenged governmental conduct. *See Illinois v. Gates,* 462 U.S. 213, 238 (1983); *United States v. Williams*, 413 F.3d 347, 353 n.6 (3d Cir. 2005). The United States Supreme Court has described "probable cause to search as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 695 (1996). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). "It requires only the kind of fair probability on which reasonable and prudent [people], not legal technicians, act." *Id.*

In his Rule 61 affidavit, trial counsel stated that he reviewed both warrants and found no basis to suppress the seized evidence. (D.I. 17-13 at 127) The Delaware Supreme Court reviewed the record and determined that the affidavit in support of the second warrant provided a sufficient factual underpinning to establish probable cause to seize and search the electronic equipment for photographic/video evidence. Given this determination, the Delaware Supreme Court held that trial counsel did not perform deficiently by not challenging the search for lack of probable cause.

---

[3]Petitioner also contends the Delaware Supreme Court unreasonably applied Delaware precedent in concluding that his challenges to the validity of the warrant and extent of the search lacked merit. (D.I. 9 at 6; D.I. 24 at 2-4) The Court will not address this contention because it asserts an error of state law that is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The affidavit of probable cause for the second warrant contained, *inter alia*, the following information and statements:

- Police were investigating SACPPT and continuous sexual abuse of a child.

- On April 11, 2011, the victim disclosed to DFS and police that Petitioner had been sexually abusing her for the past two years.

- Police executing a search warrant at Petitioner's residence on April 11, 2011 observed additional items relevant to the investigation, including sex toys, a saddle masturbation device, cameras, computers, and a couch with bedding, in plain view.

- Petitioner's wife informed the police executing the search warrant on April 11, 2011 that she was only allowed to use one of the three computers in Petitioner's computer room, and that she was not allowed to use his camera.

- "Your affiant is aware through training and experience that digital images of sexually abused children are often stored on computers, digital storage devices, and cameras."

- Officers did not believe the victim disclosed everything that happened to her, "evidenced by her not disclosing the sexual penetration of her vagina and anus until the second interview."

- "Your affiant is aware that computers store internet browsing history which would capture any transactions that [Petitioner] made related to the sex toys in his basement."

- "Your affiant knows that computer hardware [and] software[…] may be instrumentalit[ies], fruits or evidence of crime, and/or … may have been used to collect and store information about crimes (in the form of electronic data)."

- "Your affiant knows through training and experience that the act of searching and seizing information from a computer storage media often requires the seizure of most or all of the electronic storage devices … to be searched later by a qualified computer expert … because … a suspect may try to conceal criminal evidence, … [which] may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime."

(D.I. 17-13 at 48-52)

After considering the totality of the circumstances stated in the affidavit supporting the second warrant, the Court concludes that the Delaware Supreme Court reasonably determined the facts and reasonably applied the law when finding that the affidavit laid out probable cause for seizing and searching the electronic equipment found in Petitioner's home for photographic and/or video evidence. Based on this determination, the Court cannot conclude that the Delaware Supreme Court unreasonably applied *Strickland* when holding that trial counsel "did not act in an objectively unreasonable manner by not seeking to suppress the shower videos" because "there was no reasonable basis for counsel to raise a probable cause argument." *Hudson*, 2020 WL 362784, at *4.

### b. Particularity

The Fourth Amendment provides that a search warrant shall only be issued upon a showing of probable cause and that the warrant should particularly describe the places to be searched and things to be seized. *See* U.S. Const. amend. IV. The particularity requirement is satisfied when "the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended," *Steele v. United States*, 267 U.S. 498, 503 (1925), and when the warrant "describe[s] the items to be seized." *Groh v. Ramirez*, 540 U.S. 551, 558 (2004). The Fourth Amendment's particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). Accordingly, "the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Id.* at 84-85.

16

A warrant need not be technically perfect, because "[t]he standard ... is one of practical accuracy rather than technical nicety." *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975). "It is unrealistic to expect a warrant to prospectively restrict the scope of a search by directory, filename or extension or to attempt to structure search methods—that process must remain dynamic." *United States v. Burgess*, 576 F.3d 1078, 1093 (10th Cir. 2009).

In his Rule 61 appeal, Petitioner argued that the second warrant "did not satisfy the particularity requirement because it had no temporal limitation and it permitted a wide-ranging exploratory search despite that the officers had a more precise description of the alleged criminal activity and time period involved." (D.I. 17-12 at 13) The Delaware Supreme Court rejected Petitioner's argument and held that the "search warrant was not impermissibly broad," because "there was a sufficient nexus between the computer where the shower videos were ultimately found and the criminal activity that was alleged in the affidavit of probable cause." *Hudson*, 2020 WL 362784, at *4.

Although the Delaware Supreme Court did not explicitly address the Fourth Amendment's particularity requirement for a search and seizure, it cited *Wheeler v. State*[4] and *Buckham v. State*,[5] two cases that identify the Supreme Court precedent concerning the particularity doctrine. After reviewing the second warrant and supporting affidavit for "practical accuracy" while also considering the complexity of the search, the crime under investigation, and the nature of the evidence sought, the Court concludes that the Delaware Supreme Court did not unreasonably determine the facts or unreasonably apply clearly established federal law when determining that the second warrant was sufficiently particularized and not overly broad. While

---

[4] *Wheeler v. State*, 135 A.3d 282, 296 (Del. 2016).
[5] *Buckham v. State*, 185 A.3d 1, 18 (Del. 2018).

17

the warrant contained an expansive list of specific electronic equipment to be seized, the

descriptions in the warrant limited the search to evidence the police reasonably believed was

"used during the commission of SACPPT and continuous sexual abuse of a child investigation."

(D.I. 17-13 at 43, 45)

In turn, the probable cause affidavit alleged that the continuous sexual abuse occurred

over an approximate two year period prior to April 11, 2011:

> •"Your affiant is aware that on April 11, 2011 [victim] disclosed to her Delaware Division of Family Services case worker that her father [Petitioner] had been inappropriately touching her for the past two years."
>
> •"Your affiant is aware that Det. Garcia from the New Castle County Police conducted a follow up interview with [victim] reference her disclosure.  Your affiant is aware that during the follow up interview [victim] advised that approx two years ago her father [Petitioner] bought her a white battery operated vibrator."
>
> •"Your affiant is aware that Det. Garcia conducted a Post Miranda interview with [Petitioner] during which [Petitioner] admitted to buying [victim] a vibrator approx. two years ago [and] teaching [victim] how to use the vibrator to masturbate the first day that he gave it to her."
>
> •"[Petitioner] advised [Det. Garcia] that he has watched [victim] use the vibrator for approx 2 years."

(D.I. 17-13 at 48)  The probable cause affidavit also stated that a dresser in the basement of

Petitioner's residence contained approximately four vibrators, various sex toys, and DVDs.  (*Id.*

at 49)  Next to the dresser was a black computer tower, and in the same room as the dresser was

a video camera.  (*Id.*)  The room with three computers – located in the front of the residence –

contained magazines depicting young adult women dressed as teenagers and DVDs with

pornographic titles.  (*Id.* at 50)  Finally, both the victim and Petitioner stated that the sexual

abuse began at least two years prior, and police reasonably believed the conduct was still

ongoing and there might be video evidence of the crimes given the proximity of some of the electronics to the location where the victim was sexually abused. (*Id.*)

As explained above, the police officers had probable cause to seize and search the electronic equipment. The crimes under investigation were the SACPPT and the "continuing sexual abuse" of a child, and the warrant limited the seizure and search to electronic equipment (and other items not at issue here) "used during the commission of [SACPPT] and continuous sexual abuse of a child." The probable cause affidavit for the second warrant indicated that the abuse had approximately occurred over a two-year period prior to April 2011. Given all these circumstances, the Delaware Supreme Court reasonably concluded that the warrant was sufficiently particularized. *See, e.g., United States v. Conley*, 4 F.3d 1200, 1207-08 (3d Cir. 1993) ("Read as a whole, the search warrant allows the seizure of items indicative of an illegal gambling operation. Since the warrant limits the search to items related to an illegal gambling operation, there is sufficient specificity, satisfying the particularity requirement of the Fourth Amendment."). Therefore, the Delaware Supreme Court did not unreasonably apply *Strickland* when holding that trial counsel's failure to file a motion to suppress the videos on the ground that the warrant was overly broad did not fall below objective reasonable professional standards.

### c.  Search/seizure of shower videos exceeded scope of warrant

"[T]he scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Garrison,* 480 U.S. at 84-85. "If the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . , the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990). "Whether evidence is within a search warrant's scope requires not a hypertechnical analysis, but a common-sense, and realistic one." *United States v. Okorie*, 425 F. App'x 166,

169 n.1 (3d Cir. 2011) (cleaned up).  A special concern exists with respect to searches of computers and electronic equipment in general because, "[w]hile file or directory names may sometimes alert one to the contents ..., illegal activity may not be advertised even in the privacy of one's personal computer—it could well be coded or otherwise disguised." *Burgess*, 576 F.3d at 1093.  In some cases, the technological reality may be that, "in the end, there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders, and that is true whether the search is of computer files or physical files." *Id.* at 1094.

According to Petitioner, trial counsel should have argued that the search and/or seizure of the two shower videos found on his computer exceeded the scope of the warrant because the files were dated March 10, 2008, which was outside the approximate two-year time frame (April 2009 - April 2011) related to the criminal activity alleged in the probable cause affidavit.[6]  (D.I. 9 at 5, 8)  The Delaware Supreme Court implicitly rejected Petitioner's argument that the search exceeded the scope of the warrant when it found that "a search for video files bearing a date in March 2008 was within the scope of the criminal activity alleged in the affidavit of probable cause." *Hudson*, 2020 WL362784, at *4.  Based on this determination, the Delaware Supreme Court held that "counsel therefore was not ineffective for failing to challenge the warrant." *Id.*

Although the Delaware Supreme Court did not explicitly set forth the clearly established federal law for determining when a police search in the digital/electronic context exceeds the scope of a search warrant, it cited *Wheeler,* which, in turn, sets forth the applicable standard cited in Third and Tenth Circuit cases. *See Wheeler*, 135 A.3d 296 (citing *United States v. Stabile,*

---

[6]Although Petitioner presents the temporal limitation argument in terms of probable cause and particularity, the context of his argument demonstrates that he is arguing that the search of the two shower videos exceeded the scope of the warrant.

633 F.3d 219, 237 (3d Cir. 2011) and *Burgess*, 576 F.3d at 1092-94).  For the following reasons, the Court cannot conclude that the Delaware Supreme Court unreasonably applied clearly established federal law or unreasonably determined the facts when holding that the search of the two shower video files bearing a date in March 2008 was within the scope of the criminal activity in the second warrant.

The second warrant permitted a search of "any and all photographs and/or video recordings of any computer systems, electronic equipment and evidence found at the scene" used during the commission of SACPPT and continuous sexual abuse of a child.  (D.I. 17-13 at 43) The affidavit of probable cause for the second warrant stated that the criminal activity occurred for an approximate two-year period prior to April 2011 and:

> •"Your affiant is aware through training and experience that digital images of sexually abused children and child pornography are often stored on computers, digital storage devices and cameras."
>
> •"Your affiant is aware that often times child victims do not always disclose all of the abuse that they endured right away.  This is often because they are embarrassed, they fear the suspect and they do not know or trust the authorities."
>
> •"Your affiant is aware that Det. Garcia advised writer that he does not believe that [victim] has disclosed everything that has happened to her.  This is evidenced by her not disclosing the sexual penetration of her vagina and anus until the second interview."
>
> •"Your affiant knows through training and experience that the act of searching and seizing information from a computer storage media often requires the seizure of most or all of the electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a controlled environment.  This is true because of the following:
>> A)  The volume of evidence.  Computer storage devices can store the equivalent of thousands of pages of

21

> information.  Additionally, a suspect may try to conceal
> criminal evidence; he or she might store it in random
> order with deceptive file names.  This may require
> searching authorities to examine all the stored data to
> determine which particular files are evidence or
> instrumentalities of crime."

> •"Your affiant is aware that Det. Garcia interviewed [the mother of
> the victim] who informed Det. Garcia of an incidents within the past
> few months where [victim] and [Petitioner] would take showers
> together."

(D.I. 17-13 at 48, 50-52)  And finally, during the trial, the police computer analyst testified that

he could not determine when the files were created or viewed, explaining that the videos came

from a camera, and,

> So the camera says it is March 10, 2008, well, it's a year or two,
> five, whatever the camera just has that as a default date it may come
> up.  You have to look at some other different times, some might be
> the system time of the computer.  That is also relative because if you
> change – when we start a computer you have something called a bios
> that starts up first.  If you change your time in the bios before
> Windows starts, that may affect the time that your computer
> represents, thus all the files that you load will reflect an altered time.
> So time is relative.

(D.I. 17-16 at 17)

Viewed together, the warrant and affidavit established that Petitioner showered with the

victim a few months prior to April 2011, the two videos at issue showed the victim in the shower

with Petitioner's voice in the background, Petitioner was suspected of continuously sexually

abusing the victim for an approximate two-year period preceding the search, the search warrant

specified that the contents of the computer could be searched and that the suspect may try to

conceal criminal evidence with deceptive file names, and the computer analyst who conducted

the search knew through experience and training that the date on the video files did not

22

necessarily reflect the date the video was taken. Additionally, the search warrant (1) unambiguously authorized the police to seize and search the computer for electronic/video/photographic evidence of the criminal activities of SACPPT and the continuous sexual abuse of a child; and (2) unambiguously authorized the police to seize and search the electronic/video/photographic files to determine if they were evidence of the criminal activities of SACPPT and continuous sexual abuse of a child.

"[G]iven the unique problems encountered in computer searches and the practical difficulties inherent in implementing universal search methodologies, the majority of federal courts ... have employed the Fourth Amendment's bedrock principle of reasonableness on a case-by-case basis" and have concluded that "a computer search may be as extensive as reasonably required to locate the items." *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011); *see United States v. Cobb*, 970 F.3d 319, 329 (4th Cir. 2020) (finding that, if there is probable cause to search a computer for evidence of a crime, that probable cause is usually sufficient to sustain a search of the entire computer); *Burges*s, 576 F.3d at 1094. Similarly, the Third Circuit has recognized that, because "criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity," "a thorough computer search requires a broad examination of files on the computer to ensure that file names have not been manipulated to conceal their contents." *Stabile*, 633 F.3d at 237, 241. Applying these principles to Petitioner's case, while keeping in mind the probable cause affidavit's recognition that an individual may conceal criminal evidence with deceptive file names and the computer analyst's professional experience that dates on video files may not reflect the actual date of creation or viewing,[7] it was reasonable for the computer

---

[7]In *Ornelas*, the Supreme Court explicitly recognized that "a police officer may draw inferences based on his own experience in deciding whether probable cause exists." 517 U.S. at 700.

analyst to open the March 2008 files to verify that the files actually contained information, videos or photographs from 2008.  Once the analyst opened the files and viewed the shower videos, the analyst reasonably determined that the videos of the victim in the shower were "generally within the time period of abuse" (April 2009-April 2011), because the affidavit stated that Petitioner showered with the victim a few months before April 2011.  Given these circumstances, the Court cannot conclude that the Delaware Supreme Court unreasonably determined the facts or unreasonably applied the law when finding that "a search for video files bearing a date in March 2008 was within the scope of the criminal activity alleged in the affidavit of probable cause." *Hudson*, 2020 WL 362784, at *4.  Therefore, the Delaware Supreme Court did not unreasonably apply *Strickland* when implicitly holding that trial counsel's failure to file a motion to suppress the videos on the ground that the search exceeded the scope of the warrant did not fall below objective reasonable professional standards.

### 2. Trial counsel failed to interview or subpoena witnesses, failed to conduct an adequate pretrial investigation, and failed to present any evidence at the conclusion of the State's case

Petitioner contends that trial counsel provided ineffective assistance by failing to consult or subpoena the following witnesses: the victim's pediatrician; experts to rebut evidence provided by the State's sexual assault nurse examiner ("SANE"); a DNA expert; and a computer forensic expert.  The Delaware Supreme Court affirmed the Superior Court's denial of these arguments, opining:

> [Petitioner] also argues that trial counsel was ineffective because he did not conduct an adequate pretrial investigation, did not interview or subpoena additional fact witnesses, and did not call any defense witnesses or present any other evidence after the State rested its case. In this case, trial counsel engaged in vigorous cross-examination of the State's witnesses in an effort to cast doubt where

> it could—for example, concerning the victim's delayed and limited initial disclosure, the lack of any physical indicators of abuse on the victim's body, and the uncertainty surrounding the date of the shower videos—but the evidence against [Petitioner] was overwhelming, and [Petitioner] has not demonstrated how the presentation of the additional witnesses would have affected the outcome of his trial.
>
>     \*       \*       \*
>
> [Petitioner] also argues that his trial counsel provided ineffective assistance by failing to present the testimony of the victim's pediatrician or the pediatrician's medical records and by failing to consult with experts to counter evidence presented by the State's sexual assault nurse examiner, DNA expert, and computer forensics expert.  With respect to these claims, we affirm on the basis of the Superior Court's September 29, 2017 decision denying postconviction relief.

*Hudson*, 2020 WL 362784, at \*6.  Given the Delaware Supreme Court's reference to the Superior Court's decision, the Court will consider the Superior Court's reasoning when evaluating Petitioner's contentions.

### a.  Failure to call victim's pediatrician

In his Rule 61 affidavit response to Petitioner's argument concerning the decision not to call the victim's pediatrician as a witness, trial counsel explained that:

> Although [Petitioner] and I discussed his pediatrician several times, I have no recollection of [Petitioner] saying that the pediatrician had ever examined the victim's hymen or even saying anything at all about the victim's hymen. […] In addition, it is my recollection that [Petitioner] advised me that it was he, and not the victim's mother, who took the victim to her pediatric appointments…. My recollection is that the victim did not disclose any unlawful sexual contact, penetration or intercourse prior to the disclosures set forth in the discovery.  Although I had retained a private investigator to assist me in my representation of [Petitioner], under the circumstances, I did not believe there to be a benefit to calling the

25

> pediatrician as a witness simply to say that the victim did not
> disclose any sexual acts. I feared the State might use this witness to
> demonstrate [Petitioner's] controlling nature and to provide an
> explanation as to why she did not disclose, i.e., [Petitioner] was right
> there to make sure she did not tell her doctor.

(D.I. 17-13 at 124-25)

When considering Petitioner's allegation regarding trial counsel's failure to present the

victim's pediatrician as witness, the Superior Court referenced trial counsel's Rule 61 affidavit,

noting:

> Trial counsel avers that Defendant never discussed having the
> pediatrician testify about the Victim's hymen, but did discuss the
> fact that she never reported the abuse to the pediatrician. Trial
> counsel further avers that he did not subpoena the pediatrician to
> testify that the Victim did not report abuse to him because the
> Defendant was the person who took her to the appointments and the
> State could potentially argue his presence would deter the Victim
> from reporting.

*Hunter*, 2017 WL 5983168, at *2. The Superior Court then held:

> The Court finds no ineffectiveness in the decision not to call the
> pediatrician. The Court gives credence to trial counsel's assertion
> the [Petitioner] never discussed the testimony regarding the
> condition of the Victim's hymen. Further substantiating counsel's
> contention is the fact that the Sexual Assault Nurse Examiner
> ("SANE") nurse was not asked about the issue, either. As to the fact
> that the Victim did not report the abuse to the doctor, trial counsel
> made an informed, strategic decision. There is a sound, proffered
> reason for that decision which has not been challenged by the
> [Petitioner].

*Id.*

"*Strickland* [] calls for great deference to an attorney's tactical decision to forego

particular lines of investigation. And those strategic choices that counsel makes after conducting

a thorough investigation of the law and facts are virtually unchallengeable." *Blystone v. Horn*,

664 F.3d 397, 420 (3d Cir.2011). The reasons provided by trial counsel demonstrate that his

26

decision to not call the victim's pediatrician as a witness was an informed and reasonable strategic decision, entitled to deference in this proceeding under *Strickland.* Therefore, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in affirming the Superior Court's denial of the instant IATC argument.

### b. Failure to call expert to discredit SANE nurse

The Superior Court also referenced trial counsel's Rule 61 affidavit when considering Petitioner's complaint about counsel's failure to call an expert to discredit the SANE nurse, concluding that

> [counsel] made an informed, strategic decision not to discredit the SANE nurse. In addition, the SANE nurse's testimony presented contradictory statements by the Victim and indicated no physical evidence of abuse and was actually helpful to [Petitioner]. Further, [Petitioner] has made no showing as to how he was prejudiced or what an expert would have proffered to establish prejudice.

*Hunter,* 2017 WL 5983168, at *3.

Trial counsel's statements in his Rule 61 affidavit support the Superior Court's conclusion that counsel's decision not to call an expert to rebut the SANE nurse's testimony constituted an informed strategic decision. For instance, counsel states:

> As part of discovery, I was provided with the medical records documenting the victim's SANE examination. The examination revealed no physical injuries and neither corroborated nor refuted the allegations. In fact, I believed that portions of the SANE records could be of assistance in discrediting the victim in light of her apparently inconsistent statements. Nonetheless, there was nothing in the SANE records which led me to conclude that an expert was needed to interpret or attack the observations or opinions of the SANE.

(D.I. 17-13 at 125)

27

Additionally, given the overwhelming evidence against him, Petitioner cannot demonstrate a reasonable probability that the outcome of the trial would have been different but for trial counsel's failure to hire an expert to rebut the SANE nurse's testimony. Therefore, the Delaware state courts did not unreasonably apply *Strickland* when denying the instant argument.

### c.   Failure to call DNA expert

In his Rule 61 motion, Petitioner argued that trial counsel was ineffective for not calling an expert to challenge the DNA evidence on the basis that it was contaminated during the collection. Decisions to retain and call experts fall within the presumption of sound trial strategy. Petitioner does not identify any witness who would have offered an opinion contradicting the DNA evidence.

> A witness cannot be produced out of a hat. [Petitioner] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense. Rather, he must set forth facts to support his contention.

*Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991). In addition, the record supports the Superior Court's finding that trial counsel "fully and effectively argued [the issue of cross-contamination] before the jury." *Hudson*, 2017 WL 5983168, at *4; (*see* D.I. 17-16 at 28-30) Accordingly, the Court will deny the instant IATC argument for failing to satisfy § 2254(d).

### d.   Failure to call computer expert

Petitioner argues that trial counsel was ineffective because he did not call a computer expert to analyze the files on his computer or to challenge the dates assigned to the files by the State. During Petitioner's Rule 61 proceeding, the Superior Court rejected this argument, opining:

The State's expert witness testified that he recognized the computer was likely home-built and designed for file sharing. He was unable to determine the dates on which the videos of the Victim being in the shower were taken, or if the videos, once created, were ever viewed. The Victim did testify to the events surrounding the taping of the videos and gave some time estimates of when that occurred. Trial counsel argued rigorously to keep the videos out, and to secure dismissal of the [Violation] of Privacy charges. The [Trial] Court reserved decision, then denied that motion.

[Petitioner's] claims regarding the videos do not challenge their existence, or what was depicted in them. [Petitioner] does not specify what information an expert would have provided that would lead to evidence helpful to his defense. Further, he does not claim evidence exists that would establish when they were taken or if that time period would be outside the statute of limitations. The indictment alleges time frame and location. The jury was specifically instructed they must find all elements of the offenses occurred "at or about the date and places stated in the indictment." [Petitioner] was charged with class G felony of Violation of Privacy for which the statute of limitations was 5 years. The dates were contested as to when video-recordings were made of the Victim in the shower. The Victim testified the videos were made when she was 12 or 13 years old. Some portion of that period was within the statute of limitations. The [Trial] Court, therefore, allowed the charges of Violation of Privacy to go forward.

The Court finds the [Petitioner's] claims are vague and conclusory, without specification of how the [Petitioner] was prejudiced, if at all, by the absence of his own computer expert. Nor does the [Petitioner] allege the time frame was beyond the statute of limitations.

*Hunter,* 2017 WL 5983168, at *3–4.

Petitioner's assertions in this proceeding do not cause the Court to question whether fair minded jurists could disagree on the correctness of the Delaware state courts' determination that Petitioner failed to demonstrate prejudice resulting from trial counsel's failure to call a computer

expert.  Petitioner does not identify any expert who could have testified, nor does he provide any

evidence that a computer expert would have been able to rebut the testimony regarding the dates

of the videos.  Accordingly, the Court concludes that the Delaware Supreme Court reasonably

applied *Strickland* when affirming the Superior Court's denial of the instant IATC argument.

### 3.  Trial counsel failed to conduct an adequate pretrial investigation and failed to present any evidence at the conclusion of the State's case

Petitioner asserts that trial counsel failed to conduct an adequate pretrial investigation.

Petitioner also contends that trial counsel failed to raise any defense.  Petitioner presented a

general argument regarding trial counsel's failure to conduct an adequate pretrial investigation in

his Rule 61 motion, but did not include an argument regarding trial counsel's failure to present a

defense at the conclusion of the State's case in his Rule 61 motion.  Nevertheless, he presented

both arguments to the Delaware Supreme Court on post-conviction appeal. The Delaware

Supreme Court implicitly denied the two arguments when it rejected Petitioner's contention

regarding trial counsel's failure to interview and call various witnesses.  *See Hudson*, 2020 WL

362784, at \*6.

As an initial matter, Petitioner's conclusory allegations do not provide a basis for habeas

relief.  Nevertheless, to the extent the Delaware Supreme Court implicitly denied the arguments

as meritless, that decision did not involve an unreasonable application of *Strickland*.  The

evidence against Petitioner was overwhelming, and Petitioner has failed to demonstrate a

reasonable probability that the outcome of his proceeding would have been different but for trial

counsel's alleged inaction in these two areas.

#### 4.   Trial counsel failed to object to the indictment

The violation of privacy counts in Petitioner's indictment alleged that Petitioner "did knowingly tape record, photograph, film, video tape or otherwise reproduce the image of [victim] while she was undressed or had her genitals, buttocks or breast exposed, without her consent and in a place when she had a reasonable expectation of privacy." (D.I. 17-3 at 24) Petitioner contends that trial counsel provided ineffective assistance by failing to challenge the validity of the violation of privacy counts on the ground that they failed to allege that Petitioner recorded the shower videos with the intent of producing sexual gratification.[8] The Delaware Supreme Court rejected this argument, holding that trial counsel was not ineffective for failing to object and that Petitioner was not prejudiced because intent is not an element of the offense of "violation of privacy." More specifically, the Delaware Supreme Court held:

> This argument is unavailing because intent to produce sexual gratification is not an essential element of Violation of Privacy; rather, it is an affirmative defense. Under Superior Court Criminal Rule 7, an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged" and "shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated." The indictment satisfied this standard, and it was not necessary to allege the absence

---

[8]Pursuant to 11 Del. C. § 1135(a), "A person is guilty of violation of privacy when, except as authorized by law,[…] the person … (6) Tape records, photographs, films, videotapes or otherwise reproduces the image of another person who is getting dressed or undressed or has that person's genitals, buttocks or her breasts exposed, without consent, in any place where persons normally disrobe including but not limited to a … bathroom, where there is a reasonable expectation of privacy. This paragraph shall not apply to any acts done by a parent or guardian inside of that person's dwelling, or upon that person's real property, when a subject of [sic] victim of such acts is intended to be any child of such parent or guardian who has not yet reached that child's eighteenth birthday and whose primary residence is in or upon the dwelling or real property of the parent or guardian, unless the acts done by the parent or guardian are intended to produce sexual gratification for any person in which case this paragraph shall apply …"

> of an affirmative defense.  Because the indictment was not defective,
> trial counsel was not ineffective for failing to object, nor was
> [Petitioner]   prejudiced   by   the   failure   to   object.

*Hudson*, 2020 WL 362784, at *5.

On habeas review, the Court must defer to the Delaware Supreme Court's interpretation and application of Delaware statutory law.  *See Estelle*, 502 U.S. at 67-68.   Since "intent to produce sexual gratification" is not an element of the offense of "violation of privacy," the Delaware Supreme Court reasonably applied *Strickland* in concluding that trial counsel's failure to raise a meritless argument did not constitute ineffective assistance.  Therefore, the Court will deny the claim for failing to satisfy § 2254(d).

### B.  Claim Two:  Ineffective Assistance of Appellate and Postconviction Counsel

During trial, trial counsel moved for judgment of acquittal regarding the two counts of violation of privacy on the basis that the State would not be able to prove an element of the crime (*i.e.*, that the crime occurred during the time frame charged in the indictment). ( D.I. 17-15 at 80-81; D.I. 17-16 at 11-12, 39, 43)  The Superior Court denied the motion, finding Petitioner's argument to be without merit.  (D.I. 17-16 at 39)

At the end of the State's case, the Superior Court told the jury that it had not heard all the evidence in the case.  (*Id.* at 40-41)  Petitioner had, at that time, made the decision to testify.  (*Id.* at 39-40)  The following day, Petitioner changed his mind and chose not to testify or present any further evidence.  (*Id.* at 42)  Petitioner moved for a mistrial, or in the alternative, for a curative instruction contending that the trial court's comments may be interpreted by the jury to have shifted the burden of proof.  (*Id.*)  The Superior Court denied the motion for a mistrial but did give a curative instruction.  (*Id.* at 45)  The Superior Court, in its curative instruction, stated: "Yesterday I told you that you had not heard the entirety of the evidence. However, in this

particular case, the defendant has chosen not to testify.  I want to give you a very specific

instruction about that. You will hear it again later. The defendant has a Constitutional right to

testify or not testify as he chooses. . . . The burden of proof . . . is upon the State to prove the

existence of all the elements of every crime . . . this defendant is not required to present any

evidence on his own behalf . . . " (*Id.*)  The Superior Court later reiterated this instruction when

providing the jury instructions. (*Id.* at 57)

  In Claim Two, Petitioner asserts that appellate counsel was ineffective for failing to

appeal the Superior Court's denial of his motion for mistrial and his motion for acquittal on the

two violation of privacy counts.  He also contends that appellate and postconviction counsel

were ineffective for failing to review all the trial transcripts.  (D.I. 9 at 11-13)

  To the extent Petitioner asserts a free-standing substantive ineffective assistance of

postconviction counsel claim, the Court will deny the argument for failing to assert an issue

cognizable on federal habeas review.  *See Coleman*, 501 U.S. at 752 (noting that since there is no

constitutional right to an attorney in state postconviction proceedings, a petitioner cannot claim

ineffective assistance of postconviction counsel).

  In contrast, Petitioner's contention that appellate counsel provided ineffective assistance

("IAAC") is cognizable on habeas review, to be evaluated under the same *Strickland* standard

applicable to an ineffective assistance of trial counsel claim.  *See Lewis v. Johnson*, 359 F.3d

646, 656 (3d Cir. 2004).  An attorney's decision about which issues to raise on appeal are

strategic,[9] and an attorney is not required to raise every possible non-frivolous issue on appeal.

*See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).  In the

---

[9]*See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174
(3d Cir. 1999) (stating counsel is afforded reasonable selectivity in deciding which claims to
raise without specter of being labeled ineffective).

appellate context, the test for prejudice under *Strickland* "is not whether petitioners would likely prevail upon remand, but whether [the court of appeals] would have likely reversed and ordered a remand had the issue been raised on direct appeal." *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000); *see also Smith*, 528 U.S. at 287-88 (explaining that the question when determining prejudice in the appellate context is whether the issues counsel did not raise "were clearly stronger" than the issues counsel did raise).

Petitioner presented his instant complaints about appellate counsel in his Rule 61 motion and on post-conviction appeal. Both the Superior Court and the Delaware Supreme Court correctly identified *Strickland* as the applicable standard when holding that Petitioner failed to establish that appellate counsel provided ineffective assistance. Therefore, Claim Two's IAAC arguments will only warrant relief if the Delaware Supreme Court's decision was an unreasonable application of *Strickland*.

### 1. Appellate counsel's failure to appeal motions for mistrial and judgment of acquittal

Appellate counsel raised one issue on direct appeal – that it was plain error to admit evidence of the fifteen improperly indicted counts of SACPPT. (D.I. 17-6) In his Rule 61 affidavit, appellate counsel explained that he did not appeal the denial of the motions for mistrial and judgment of acquittal because he did not believe there were any issues that could result in reversal. (D.I. 17-13 at 142-43) He raised only one issue – the improper admission of evidence involving the fifteen SACPPT counts – because, after thoroughly reviewing the record (which included the trial transcripts, victim statement, police reports, investigative summaries, and motions and arguments advanced at sidebar), he believed the argument had the greatest likelihood of securing a new trial for Petitioner. (*Id.* at 142) Appellate counsel did not want to

taint the argument with other weaker issues.  Appellate counsel also noted that, although the issue raised on appeal did not succeed, it did prompt oral argument.  (*Id.* at 143)

When denying Petitioner's instant IAAC argument, the Delaware state courts explained that a defendant can only show ineffective assistance of appellate counsel when "the attorney omits issues that are clearly stronger than those the attorney presented."  *Hudson*, 2020 WL 362784, at *7; *see also Hunter*, 2018 WL 2085006, at *3-4.  Referencing appellate counsel's assertion that he chose to advance what he deduced to be the most meritorious claim, both state courts determined that Petitioner failed to demonstrate that appellate counsel was objectively unreasonable in failing to appeal the denial of the two motions.  *See Hudson*, 2020 WL 362784, at *7; *see also Hunter*, 2018 WL 2085006, at *3-4.

Notably, in this proceeding, Petitioner has not demonstrated that his arguments regarding the denial of the two motions are nonfrivolous, or that they would have been stronger on appeal than the issue appellate counsel did raise.  Given these circumstances, the Court concludes that the Delaware state courts reasonably applied *Strickland* when denying the instant IAAC argument in Claim Two.

### 2.  Appellate counsel's failure to review transcripts

Petitioner also contends that appellate counsel provided ineffective assistance because he did not review the "entire record," including all the transcripts of the trial court proceedings.  (D.I. 9 at 12)  As explained more completely by the Delaware Supreme Court in Petitioner's postconviction appeal:

> Specifically, [Petitioner] asserts that postconviction counsel could not have reviewed the entire record, because transcripts of jury selection on January 31, February 1, and February 2, 2012 were not prepared until after the Superior Court denied [Petitioner's] motion for postconviction relief and ruled on postconviction counsel's

35

> motion to withdraw.  We find no reversible error. [...] Moreover, to the extent that [Petitioner] also asserts this claim with respect to his appellate counsel, he has not demonstrated that his counsel's representation fell below an objective standard of reasonableness, nor is there a reasonable probability that the result of the proceedings would have been different if counsel had reviewed the specified transcripts.  All of the transcripts have now been prepared, and [Petitioner] has not identified any viable issue for review arising from those transcripts; nor has this Court found any. Indeed, the transcript of the proceedings on January 31, 2012—the only one that had not been prepared before [Petitioner] filed his briefs in this case—records the first day of jury selection, at the conclusion of which the parties jointly moved to strike the entire panel, because of concerns that arose relating to comments that potential jurors had made in the courtroom or hallway. The Superior Court granted the motion, and voir dire and jury selection began anew the next day, with a new group of potential jurors.

*Hudson*, 2020 WL 362784, at *2.

Given Petitioner's failure to demonstrate how his direct appeal would have been different but for appellate counsel's failure to review the transcripts, the Court concludes that the Delaware Supreme Court reasonably applied *Strickland* when denying the instant IAAC argument in Claim Two.

Accordingly, the Court will deny Claim Two in its entirety for failing to satisfy § 2254(d).

### C.  Claim Three:  *Brady* Violation

In Claim Three, Petitioner contends that the State violated *Brady* by failing to provide him with information that the victim's hymen was intact and that she denied the abuse occurred. (D.I. 8 at 9; D.I. 9 at 13-14)  Petitioner presented this argument in his Rule 61 motion, and the Superior Court denied it as procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3) because Petitioner did not raise the issue in the proceedings leading to his judgment of

conviction. *See Hunter*, 2017 WL 5983168, at *6. Petitioner did not appeal that decision. Instead, he raised the same *Brady* claim in his second Rule 61 motion, which the Superior Court summarily denied as procedurally barred under Rule 61(i)(2) for being a second or successive Rule 61 motion. (D.I. 17-20) Petitioner did not appeal that decision.

This procedural history demonstrates that Petitioner has not exhausted state remedies for Claim Three because he did not present the *Brady* argument to the Delaware Supreme Court on direct appeal or postconviction appeal. At this juncture, any attempt by Petitioner to raise Claim Three in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and successive under Rule 61(i)(2). Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant argument. Similarly, the exceptions to Rule 61(i)(1)'s time-bar and Rule 61(i)(2)'s successive bar contained in Rule 61(i)(5) & (d)(2) do not apply to Petitioner's case, because he does not allege a credible claim of actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to the instant argument. Given these circumstances, the Court must treat  the arguments in Claim Three as exhausted but procedurally defaulted, meaning that the Court cannot review the merits of the Claim absent a showing of cause-and-prejudice or a miscarriage of justice.

To the extent Petitioner attempts to invoke *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) to establish cause for his default by blaming postconviction counsel's failure to raise the instant *Brady* argument in his Rule 61 motion, the attempt is unavailing. In *Martinez*, the Supreme Court held that inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective

assistance of trial counsel.  *Id.* at 14-17.  *Martinez*'s limited exception to the procedural default

doctrine does not apply here because Claim Three asserts a freestanding *Brady* claim, rather than

an ineffective assistance of trial counsel claim.

Petitioner does not assert any other cause for his default.  In the absence of cause, the

Court will not address the issue of prejudice.  Additionally, the miscarriage of justice exception

to the procedural default doctrine is inapplicable because Petitioner has failed to provide new

reliable evidence of his actual innocence.  Therefore, the Court will deny Claim Three as

procedurally barred.

### D.  Claim Four:  Inadequate *Voir Dire* and Related IATC

In his final Claim, Petitioner asserts that the Superior Court's *voir dire* was inadequate to

assess each juror's ability to be impartial, and trial counsel provided ineffective assistance by

failing to object to the allegedly inadequate *voir dire*.  (D.I. 9 at 14-18)  Both arguments are

unexhausted because Petitioner did not present them to the Delaware Supreme Court on direct

appeal or postconviction appeal.  Petitioner cannot return to the Superior Court to present these

unexhausted arguments, because a Rule 61 motion would be barred as untimely under Rule

61(i)(1) and successive under Rule 61(i)(2).  Although Rule 61(i)(1) provides for an exception to

the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable

right that is newly recognized after the judgment of conviction is final," no such right is

implicated in the instant argument.  Similarly, the exceptions to Rule 61(i)(1)'s time-bar and

Rule 61(i)(2)'s successive bar contained in Rule 61(i)(5) & (d)(2) do not apply to Petitioner's

case, because he does not allege a credible claim of actual innocence, lack of jurisdiction, or that

a new rule of constitutional law applies to the instant argument.  Given these circumstances, the

Court must treat  the arguments in Claim Four as exhausted but procedurally defaulted, meaning

that the Court cannot review the merits of the Claim absent a showing of cause-and-prejudice or a miscarriage of justice.

To the extent Petitioner attempts to establish cause for his default of the substantive *voir dire* by blaming trial and appellate counsel for not raising the argument during their respective proceedings, the argument is unavailing.  In his Rule 61 proceeding and subsequent appeal, Petitioner did not present an ineffective assistance of trial or appellate counsel claim based on counsel's failure to raise the instant *voir dire* issue.  Consequently, these ineffective assistance of counsel allegations are procedurally defaulted, and cannot excuse Petitioner's procedural default of the substantive *voir dire* claim.  *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000).

To the extent Petitioner attempts to establish cause under *Martinez* by blaming postconviction counsel for not including the *voir dire* argument in his Rule 61 proceeding, it is similarly unavailing.  An allegation of ineffective assistance of postconviction counsel can only excuse a default when the underlying claim is one of ineffective assistance of trial counsel.  *See Martinez,* 566 U.S. at 12, 16-17.  Here, Claim Four asserts a freestanding *voir dire* issue and not an ineffective assistance of trial counsel.  Therefore, *Martinez* is inapplicable and does not provide cause for Petitioner's default.

Finally, any attempt to trigger *Martinez*'s limited exception by alleging that postconviction counsel failed to argue that trial counsel was ineffective for not raising the *voir dire* issue during trial is also unavailing.  The *Martinez* exception to excuse procedural default only applies where postconviction counsel did not present the IATC claim in the initial-review collateral proceedings, and "does not concern errors in other kinds of proceedings, including appeals from initial-review collateral proceedings*." Martinez,* 566 U.S. at 16.  In Petitioner's case, after post-conviction counsel moved to withdraw, Petitioner was permitted to submit his

own claims but failed to present the instant *voir dire* argument in his Rule 61 motion or Rule 61 appeal. In other words, the instant default occurred because of Petitioner's failure to raise the argument, not because of postconviction counsel's failure.

In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not alleged "new reliable evidence" of his actual innocence such that a fundamental miscarriage of justice will result if the Court does not review the argument.

The Court notes that Petitioner requests an evidentiary hearing in order to develop the record for the defaulted *voir dire* claim, asserting that "the state process was inadequate and the external factor of ineffective counsel prevented [him] from having an opportunity to fully and fairly develop the record in state court." (D.I. 9 at 18) A federal habeas court cannot hold an evidentiary hearing for a procedurally defaulted claim unless the petitioner demonstrates (1) the claim is based upon new, retroactive constitutional law or (2) the facts sought would have not been brought to light during the state court proceeding even with due diligence. *See* 28 U.S.C. § 2254(e)(2)(A)-(B); *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723 (3d Cir. 2022). "At a minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011).

The Court concludes that Petitioner has failed to establish that an evidentiary hearing is appropriate, because he fails to demonstrate that § 2254(e)(2)'s requirements are met. Notably, the *voir dire* argument could have been raised in state court, and Petitioner's default of the related IATC argument was due to his own failure to raise the IATC argument in his Rule 61 proceeding.

Accordingly, the Court will deny the arguments in Claim Four as procedurally barred from habeas review.

### E. Request for Discovery and Appointment of Counsel

Petitioner asserts a single sentence request for discovery and the appointment of counsel at the end of his Petition. (D.I. 9 at 19)  Given the Court's determination that the Petition must be dismissed, the Court concludes that the two requests are moot.

## IV.  CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Additionally, when a district court denies a habeas claim or petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the claim or petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  The Court is satisfied that reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

41

## V.    CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without holding an evidentiary hearing or issuing a certificate of appealability.  An appropriate Order will be entered.